Erin Rose Ronstadt, SBN 028362
Clayton W. Richards, SBN 029054
OBER PEKAS RONSTADT, PLLC
3030 N. 3rd Street, Suite 1230
Phoenix AZ 85012
Phone: (602) 277-1745
Fax: (602) 761-4443
erin@oberpekas.com
clayton@oberpekas.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ray M. Lopez, a single man,<br><br>Plaintiff,<br><br>v.<br><br>State Farm Insurance Companies Group Health and Welfare Plan for United States Employees, an ERISA benefit plan; and Life Insurance Company of North America, a plan fiduciary,<br><br>Defendants. | No.<br><br>**COMPLAINT** |

For his claims against the State Farm Insurance Companies Group Health and Welfare Plan for United States Employees (the "Plan") and Life Insurance Company of North America ("LINA") (collectively "Defendants"), Plaintiff Ray M. Lopez ("Mr. Lopez" or "Plaintiff") alleges as follows:

**Jurisdiction, Venue, And Parties**

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. The Plan is a purported ERISA benefit plan established and maintained by State Farm Mutual Automobile Insurance Company ("State Farm") for the benefit of its employees.

3. LINA administers long-term disability ("LTD") claims for the Plan.

4. LINA is a Plan fiduciary.

5. LINA has a duty to administer the Plan prudently and in the best interests of

all Plan participants and beneficiaries.

6. Mr. Lopez was a participant and beneficiary of the Plan as an employee of State Farm.

7. At the time Mr. Lopez sought LTD benefits under the Plan, LINA administered claims for State Farm under the Plan, acted on behalf of the Plan, and acted as an agent of State Farm and/or the Plan to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan.

8. LINA administrated claims under the name Cigna.

9. Mr. Lopez currently resides in Johnson County, Kansas, but was a resident of Maricopa County at all relevant times while he was a Plan participant.

10. The Plan has its principal place of business in the State of Illinois.

11. LINA is domiciled in the Commonwealth of Pennsylvania and the State of Connecticut and is a wholly owned subsidiary of CG Corporation, a Connecticut holding company. CG Corporation is in turn a wholly owned subsidiary of Cigna Holdings, Inc., a Delaware holding company. The parent company of Cigna Holdings, Inc. is Cigna Corporation, a Delaware holding company.

12. Defendants LINA and the Plan are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

13. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

14. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

### *Mr. Lopez's Employment*

15. Mr. Lopez began working for State Farm on September 7, 1993.

16. As of his last day of work on October 20, 2015, Mr. Lopez worked as an Image Processing Lead.

17. Mr. Lopez dedicated over twenty years of service to State Farm before leaving due to disability.

18. As an Image Processing Lead, Mr. Lopez was required to manage the workflow of paper documents, including moving resources from one function to another, performing production work such as prepping, scanning and indexing documents, coaching and assisting other preppers, scanners and indexers, handling incoming phone calls from business partners with questions, and processing requests and queries in the company's helpdesk email inbox.

19. A large part of Mr. Lopez's job consisted of walking anywhere from 15 to 200 feet, lifting totes weighing over 20 pounds, and pushing carts with 100 to 350 pounds of paper on them. Mr. Lopez often had to stand for long periods of time. Alternatively, on low staffing days, he had to sit for prolonged periods of time.

20. Mr. Lopez was often recognized for consistently exceeding company expectations, demonstrating high level competencies, and was viewed as a role model.

21. Mr. Lopez loved his job and diligently attended work when he could, despite multiple surgeries.

22. Due to his disabling conditions, Mr. Lopez is unable to return to work in any capacity.

### Mr. Lopez's Disabling Conditions

23. Mr. Lopez suffers from lumbar degenerative disc disease ("DDD"), lumbar post-laminectomy syndrome, chronic pain syndrome, lumbar radiculopathy, and myalgia.

24. Over the years, Mr. Lopez has undergone extensive lumbar surgical intervention:

- 1990 – surgery for a herniated disc at the L4 level;
- 1997 – discectomy at L5-S1 level;
- 2001 – laminectomy at L3 level;

-3-

- 2003 – spinal fusion at L4-L5 and L5-S1 levels;
- 2006 – hardware removal due to excruciating pain (two screws of which were embedded in scar tissue, could not be removed, and remain in his back);
- 2010 – second spinal fusion at L3-L4 level;
- 2015 – posterior laminectomy and spinal cord stimulator implantation.

25. Unfortunately, the procedures did not relieve Mr. Lopez's symptoms and, in fact, worsened his conditions.

26. In October 2017, Mr. Lopez's physician, Dr. Robert Milam, assessed that Mr. Lopez is unable to perform any level of work, and his inability to return to work was of "indefinite" duration.

27. A January 15, 2019 x-ray of Mr. Lopez's thoracic spine revealed that his DDD had worsened.

28. LINA ignored the fact that Mr. Lopez's physical conditions also impacted his cognitive abilities.

29. The Social Security Administration ("SSA") acknowledged Mr. Lopez would be off-task more than 15% of a normal workday due to chronic pain, which was a basis for awarding Mr. Lopez's Social Security Disability Insurance ("SSDI") benefits.

30. Mr. Lopez continues to experience debilitating symptoms, which are only minimally controlled by heavy medications.

31. Recent examination findings note lumbar pain on palpation, bending, and extension; decreased motor strength; and decreased sensation in Mr. Lopez's right thigh and below the right knee.

32. Mr. Lopez continues to explore conservative treatment measures and was recently a candidate for an intrathecal pain pump.

33. Mr. Lopez's treating physicians have repeatedly corroborated his Disability due to severe pain and physical functional restrictions.

34. Due to his conditions and the restrictions and limitations assigned by his treating doctors, Mr. Lopez is unable to work in any occupation as defined by the Plan.

**Plan Language**

35. Under the Plan, Mr. Lopez is considered Disabled for the first 24 months if, because of Injury or Sickness, he is "unable to perform all of the material the duties of [his] regular occupation, or solely due to Injury or Sickness, [he] is unable to earn more than 80% of [his] Indexed Covered Earnings . . .."

36. To remain eligible for LTD benefits after 24 months, Mr. Lopez must be "unable to perform all the material duties of any occupation for which [he] may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, [he] is unable to earn more than 80% of his Indexed Covered Earnings."

37. "Covered Earnings" are defined as Mr. Lopez's base salary on the date immediately preceding the date Disability begins, excluding commissions, bonuses, overtime pay or other forms of compensation.

38. For the first 12 months that Monthly Benefits are payable, "Indexed Covered Earnings" are Mr. Lopez's Covered Earnings "plus an increase applied on each anniversary of the date Monthly Benefits became payable."

39. The Policy provides, "The amount of each increase of [Indexed Covered Earnings] will be the lesser of: 1) 10% of [Mr. Lopez's] Indexed Covered Earnings during the preceding year of Disability; or 2) the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year."

40. Mr. Lopez is entitled to LTD benefits until he is no longer Disabled under the Plan or until "the last day of the month coincident with [his] 65th birthday," which is October 31, 2035.

41. Since his last day worked, Mr. Lopez has remained Disabled under the Plan.

**Mr. Lopez's LTD Benefits**

42. Due to his worsening medical conditions, Mr. Lopez ceased working as of October 21, 2015.

43. Mr. Lopez received "Paid Sick Leave" ("PSL") benefits through State Farm between October 21, 2015 and August 15, 2016, during which time LINA administered his PSL benefits and conducted reviews on several occasions.

44. LINA continued to find Mr. Lopez Disabled during the PSL benefit period.

45. State Farm funded Mr. Lopez's PSL benefits.

46. Around April 2016, Mr. Lopez applied for LTD benefits; however, LINA would not process the application for benefits, as it was purportedly too soon to begin its LTD evaluation.

47. On or around June 22, 2016, Mr. Lopez submitted his LTD application for a second time to LINA.

48. On August 5, 2016, LINA denied Mr. Lopez's LTD benefits (the "2016 Denial"), claiming "[t]he medical [evidence] on file [did] not support a significant level of functional deficits that would preclude [him] from returning to [his] own occupation."

49. The 2016 Denial was largely based on biased medical reviews and a flawed vocational assessment.

50. Due to financial hardship after LINA's 2016 Denial, as well as Mr. Lopez's unfamiliarity with the process, it took several months for Mr. Lopez to obtain legal representation for his LTD matter.

51. Through counsel, Mr. Lopez requested copies of all information relevant to his LTD claim on November 22, 2016.

52. Due to LINA's failure to produce all relevant documentation within the ERISA-mandated timeframe, Mr. Lopez, through counsel, sent a second request for relevant documentation on January 6, 2017, which included a request for a 90-day extension to submit his appeal in light of LINA's delay.

53. LINA failed to respond a second time, prompting a telephone call from Mr. Lopez's attorney to LINA on January 24, 2017.

54. During this call, LINA took responsibility for the delay and issued a January 25, 2017 letter granting only a 60-day extension to submit Mr. Lopez's Appeal.

55. Despite being prejudiced by LINA's restricted timeframes and incomplete disclosures, Mr. Lopez timely appealed the 2016 Denial on April 3, 2017 and provided sufficient evidence that supported he was Disabled from his "regular occupation" or "any occupation" under the Plan.

56. LINA subsequently reinstated Mr. Lopez's benefits on July 17, 2017, finding "physical functional limitation" based on "significantly decreased lumbar [range of motion]," which his treating providers objectively supported.

57. During that time, LINA was aware that Mr. Lopez had a pending SSDI claim, and that he was scheduled for a hearing with an Administrative Law Judge ("ALJ") for the SSA on May 7, 2018.

58. LINA instead focused its efforts on the upcoming "any occupation" period, and obtained internal, biased medical reviews that favored a benefit termination.

59. The SSA subsequently issued a fully favorable decision on May 14, 2018 and retroactively awarded Mr. Lopez SSDI benefits as of October 2015.

60. Mr. Lopez's counsel provided LINA with the SSDI Notice of Award in June 2018.

61. While LINA immediately commenced efforts to collect on the overpayment it asserted on Mr. Lopez's LTD claim due to the SSDI award, it waited until August 2018 to request the SSDI file.

62. LINA terminated Mr. Lopez's LTD benefits on October 5, 2018 (the "2018 Denial") and, much like the 2016 Denial, relied solely on ill-informed, biased reviews from its internal medical and vocational reviewers, despite knowledge of the fully-favorable SSDI award and the expectation it would receive Mr. Lopez's SSDI file.

63. While LINA failed to properly consider Mr. Lopez's SSDI award and the evidence contained in his SSDI file, such as treating physician assessments supportive of disability from any occupation, it continued to aggressively pursue full reimbursement for the purported overpayment of LTD benefits due to the SSDI award, even after terminating his benefits.

-7-

64. Due to LINA's voluminous and purportedly incomplete claim file disclosures, Mr. Lopez requested a 90-day extension of time until July 29, 2019 to submit his appeal.

65. Because LINA would only allow a 30-day extension of time, Mr. Lopez timely submitted his appeal on May 29, 2019 (the "2019 Appeal"), but stated his intent to supplement with additional materials.

66. Mr. Lopez later supplemented his appeal with supporting evidence, including updated medical records, on July 29, 2019.

67. With his 2019 Appeal and the supplemental materials, Mr. Lopez provided compelling evidence to support his continued Disability from "any occupation" under the Plan.

68. According to the USPS website, the 2019 Appeal was confirmed delivered to LINA via U.S. Certified Mail on August 2, 2019.

69. On September 11, 2019, for the first time since the confirmed August 2nd delivery date, and one day before the ERISA-mandated 45-day review deadline, LINA's assigned appeal specialist, John Archacki, contacted a representative of Mr. Lopez's attorney via telephone and advised LINA had not yet received the 2019 Appeal materials.

70. That same day, in an effort to expedite matters, a representative of Mr. Lopez's attorney electronically mailed the 2019 Appeal to a familiar e-mail address provided by Mr. Archacki during his telephone call with counsel's paralegal – the same e-mail address to which counsel has sent appeals in multiple other cases.

71. Over two weeks later, on September 27, 2019, Mr. Archacki telephoned counsel's paralegal and advised he had still not received the flashdrive.

72. Mr. Archacki now claimed he would not have been able to access the materials through the e-mail address he provided.

73. That same day, counsel's office sent the 2019 Appeal materials to LINA for the third time, which was confirmed delivered on September 30, 2019 according to the USPS website.

-8-

74. One week later, on October 7, 2019, Mr. Archacki informed counsel's office that he received the 2019 Appeal materials.

75. That same day, LINA prepared a letter (postdated on October 10th and delivered to counsel's office on October 15th), requesting a 45-day extension of time to review the 2019 Appeal due to the need for an Independent Peer Review.

76. Mr. Lopez subsequently objected to the extension, asserting that an Independent Peer Review is not a "special circumstance" under ERISA.

77. ERISA regulations permit an additional 45 days to render a decision on appeal when "special circumstances" exist, but notice of the need for the additional time must be made during the initial 45-day period.

78. LINA did not notify Mr. Lopez of the need for additional time or identify "special circumstances" during the initial 45-day period.

79. Mr. Lopez is therefore deemed to have exhausted his administrative remedies and is entitled to de novo review. See 29 C.F.R. 2560.503-1 (l)(2)(i) (if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan . . . Accordingly, the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. If a claimant chooses to pursue remedies under section 502(a) of the Act under such circumstances, the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary.)

80. LINA finally denied Mr. Lopez's claim in a letter dated December 3, 2019 (the "Final Denial").

81. Once again, LINA relied upon the opinions of non-examining medical consultants to conclude that Mr. Lopez was not Disabled.

82. LINA's Final Denial came over 4 months from the date Mr. Lopez supplement his 2019 Appeal.

83. Mr. Lopez cannot perform the material duties of his Regular Occupation or Any Occupation and therefore comes within the definition of Disability under the Plan.

84. Mr. Lopez is entitled to de novo review due to LINA's violation of ERISA's regulations.

## COUNT I
### (Recovery of LTD Plan Benefits)
### (LINA and the Plan)

85. All other paragraphs are incorporated by reference.

86. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

87. The Plan represents LTD coverage, among other benefits, and a promise to provide LTD benefits until Mr. Lopez is no longer Disabled under the terms of the Plan.

88. Mr. Lopez continues to be Disabled from his Regular Occupation and Any Occupation.

89. Mr. Lopez has claimed the benefits under the Plan to which he is entitled.

90. Mr. Lopez reasonably expected that his medical conditions met the requirements of Disability as defined by the Plan and that he would receive benefits under the Plan until he reaches age 65 or until he was no longer disabled.

91. Despite the coverage of Mr. Lopez's Disability, LINA and the Plan improperly terminated his LTD benefits in breach of the Plan and ERISA.

92. LINA and the Plan's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

93. Although the Plan states LINA has discretion with respect to claims and appeals and to interpret the Plan, under ERISA that can only be true if the Plan reserved that discretion to the Plan administrator, the Plan terms provide a mechanism for the Plan administrator to delegate that discretion, and there is evidence that the discretion was delegated in accordance with the terms of the Plan.

94. Even if the Plan administrator properly delegated discretionary authority to LINA, in light of LINA's wholesale and flagrant procedural violations of ERISA, including a failure to timely render a decision on Mr. Lopez's Appeal, Mr. Lopez should be entitled to *de novo* review. *See Halo v. Yale Health Plan,* 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

95. Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Mr. Lopez is informed and believes that LINA makes claims decisions based on the claims resources and financial risk it faces on certain claims.

96. LINA wrongfully terminated Mr. Lopez's disability benefits without providing a coherent explanation for its denials, and in a way that conflicts with the plain language of the Plan, violating 29 U.S.C. §§ 1109, 1132.

97. LINA did not properly consider all of the available evidence when terminating Mr. Lopez's benefits.

98. LINA failed to conduct a full and fair review.

99. LINA misstated medical evidence for its own financial benefit, *e.g.,* it excessively relied on biased medical reviews provided by in-house medical consultants.

100. LINA relied on findings that constitute "clearly erroneous findings of fact" to terminate Mr. Lopez's benefits.

101. LINA abused its discretion by basing its decision on unreliable and inaccurate information.

102. Upon information and belief, LINA tainted its medical file reviewers by giving the reviewers inaccurate information regarding Mr. Lopez, while also failing to provide its reviewers with all of the relevant evidence.

-11-

103. Upon information and belief, LINA provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

104. LINA routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

105. LINA unreasonably withheld relevant documents throughout the entire claim and poorly managed the file, which is evidenced, in part, by its repeated failure to provide all relevant documents.

106. LINA's and the Plan's failure to comply with ERISA's disclosure requirements and poor management of the file demonstrates its abuse of discretion and improper claims handling.

107. LINA failed to properly consider the opinions of Mr. Lopez's treating and examining physicians.

108. In terminating Mr. Lopez's LTD benefits, LINA completely disregarded evidence that Mr. Lopez's conditions had not changed or improved.

109. LINA has no evidence that Mr. Lopez's conditions changed or improved since it determined that he met the definition of Disabled in the Policy.

110. Upon information and belief, LINA used in-house reviewers in evaluating Mr. Lopez's claim, because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of Mr. Lopez's benefits.

111. These reviewers arbitrarily reached their opinions based on insufficient evidence or investigation.

112. LINA's reviewing physicians never set forth adequate substantive reasons why Mr. Lopez's treating doctors' opinions were incorrect.

113. LINA also failed to adequately explain why it credited the physician reviewers over Mr. Lopez's treating physicians.

114. LINA engaged in other procedural irregularities, which it did to serve its own financial best interests.

115. On information and belief, LINA engaged in claim discussions to decide the directions of appeals without having reviewed all of the medical evidence, demonstrating its predetermined path of terminating benefits.

116. This is evidenced by LINA's termination of Mr. Lopez's claim in 2018 before it received the Social Security claim file.

117. LINA intentionally gathered evidence to stack the deck in its favor and against Mr. Lopez.

118. Mr. Lopez alleges upon information and belief that LINA has a parsimonious claims handling history.

119. LINA failed to conduct a "meaningful dialogue" regarding Mr. Lopez's claim.

120. Under the de novo standard of review, to be entitled to benefits Mr. Lopez need only prove by a preponderance of the evidence that he is disabled.

121. Even under the abuse of discretion standard of review, LINA abused its discretion, because its decision terminating Mr. Lopez's disability benefits was arbitrary and capricious and caused or influenced by LINA's, its reviewing physicians, and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

122. Mr. Lopez is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of LINA's reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Mr. Lopez's LTD claim.

123. Under the de novo standard of review, Mr. Lopez is entitled to discovery regarding, among other things, the credibility of LINA's medical reviews and LINA's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity

-13-

and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

124. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Mr. Lopez is entitled to recover all benefits due under the terms of the Plan, and to enforce his rights under the Plan.

125. Mr. Lopez is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of his disability benefits. He is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

126. Pursuant to 29 U.S.C. § 1132(g), Mr. Lopez is entitled to recover his attorneys' fees and costs incurred herein.

127. Mr. Lopez is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid.

**WHEREFORE**, on all claims, Mr. Lopez prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A. All past LTD benefits under the terms of the Plan;

B. Clarifying and determining Mr. Lopez's rights to future benefits under the terms of the Plan;

C. For any other benefits Mr. Lopez may be entitled to receive under the Plan due to his disability;

D. An award of Mr. Lopez's attorneys' fees and costs incurred herein;

E. An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

F. For such and further relief as the Court deems just, equitable, and reasonable.

**OBER PEKAS RONSTADT, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

Dated this 23rd day of January, 2020.

                OBER PEKAS RONSTADT, PLLC

                By: *s/ Erin Rose Ronstadt*
                    Erin Rose Ronstadt
                    Clayton W. Richards
                    *Attorneys for Plaintiff*